# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

MAY 02 2018

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Criminal No. H-18-** |
| **ANN GUIN** | § | |
| **a/k/a CHARLOTTE ANN GUIN** | § | |

**18 CR  235**

## CRIMINAL INFORMATION

The United States Attorney charges:

At all times material to this Criminal Information:

## COUNT ONE
(Conspiracy to Commit Bank Fraud, 18 U.S.C. § 371)

A.   **INTRODUCTION**

1.   The Federal Deposit Insurance Corporation (FDIC) was an agency of the

United States established to protect depositors by insuring the deposits of

member banks against loss up to $100,000 with the purpose of preventing

their collapse and instilling public confidence in the nation's banking

institutions.  The FDIC insurance fund was backed by the United States

government.

2.   Bank One, N.A. and JPMorgan Chase Bank, NA were federally insured

financial institutions with branch locations in Houston, Texas whose

deposits were insured by the FDIC.

1

3.      In 2004, JPMorgan acquired Bank One.  Both Bank One and JPMorgan offered private client services including access to a "private banker" for customers who maintained high average bank balances who wanted personalized attention for their banking needs.

4.      Defendant **ANN GUIN a/k/a CHARLOTTE ANN GUIN (GUIN)** worked as a banker for more than thirty years for Bank One, and then JPMorgan in Houston, Texas.

5.      JPMorgan terminated **GUIN** in March 2015.  At the time of her termination, **GUIN** was serving as the private banker for several bank clients, including a co-conspirator and client "G."  G was a successful Houston businessman with substantial financial assets.  **GUIN** had been the private banker for the co-conspirator and G at Bank One, and remained so after JPMorgan acquired Bank One.

6.      In 2005, the co-conspirator was seeking a line of credit.  **GUIN** and the co-conspirator knew the Bank would not approve a line of credit for the co-conspirator without a guarantor with substantial financial assets.

7.      From 2005-2014, **GUIN** signed or caused to be signed G's signature or the signature of one of G's company employees as guarantor for the co-conspirator on a $600,000 line of credit and increases up to $6,750,000.  G

had no knowledge of the guarantee, and none of the signatures for G or his company was authorized.

8. From 2009-2014, **GUIN** signed or caused to be signed the signature of G or one of G's company employees as the guarantor for the co-conspirator on a $500,000 line of credit with increases up to $1,950,000. G had no knowledge of the guarantee, and none of the signatures for G or his company was authorized.

9. Between on or about December 1, 2006, and on or about May 22, 2012, the co-conspirator paid more than $1 million in loan proceeds from the lines of credit to **GUIN'S** grandson, sister, daughter-in-law, and son's business.

10. When the co-conspirator had trouble making payments on the lines of credit, **GUIN** and the co-conspirator solicited other Bank customers to make loans to the co-conspirator to "invest" in the co-conspirator's business, when in truth and fact the money was to make payments on the co-conspirator's outstanding lines of credit.

11. In May 2015, the co-conspirator defaulted on both lines of credit.

**B.** **THE CONSPIRACY**

12. From in or about 2005 and continuing through in or about 2015, in the Houston Division of the Southern District of Texas and elsewhere, the defendant,

3

**ANN GUIN**
**a/k/a CHARLOTTE ANN GUIN,**

did knowingly combine, conspire, confederate, and agree with others known

and unknown to commit the following offense against the United States:

defendant herein, did knowingly combine, conspire, confederate, and agree
with others known and unknown to commit the following offense against the
United States, that is: to knowingly execute and attempt to execute a scheme
and artifice to defraud JPMorgan, a federally insured financial institution,
and to obtain moneys, funds, and credits owned by and under the custody
and control of JPMorgan, by means of material false and fraudulent
pretenses, representations, and promises, in violation of Title 18, United
States Code, Section 1344.

## C.   MANNER AND MEANS OF THE CONSPIRACY

13.   The defendant and her co-conspirator sought to accomplish the purpose of

the conspiracy by the following manner and means, among other things:

   a. obtaining lines of credit by submitting applications that contained forged

   and unauthorized guarantor signatures;

   b. failing to disclose payments to **GUIN** and her family;

   c. making unauthorized transfers from another customer's line of credit to

   the co-conspirator's bank account.

   d. engaging in monetary transactions with the proceeds of the scheme in

   amounts over $10,000.

## D.   ACTS IN FURTHERANCE OF THE CONSPIRACY

14.   In furtherance of the conspiracy and to achieve the purpose thereof, the

4

Case 4:18-cr-00235   Document 1   Filed in TXSD on 05/02/18   Page 5 of 7


defendant and her co-conspirator, in the Southern District of Texas and elsewhere, committed and caused to be committed at least one of the following acts, among others:

(1)  On or about March 22, 2005, **GUIN** signed or caused to be signed G's signature as a guarantor for a co-conspirator, causing the Bank to approve a $600,000 line of credit.

(2)  On or about November 17, 2005, **GUIN** transferred or caused to be transferred an advance of $60,000 from G's line of credit to the co-conspirator's bank account without G's knowledge or authorization.

(3)  On or about November 18, 2005, the co-conspirator wrote **GUIN** an Email that said: *"Thank you...this will make the day forever memorable."*

(4)  On or about October 12, 2009, **GUIN** and the co-conspirator exchanged an email that said:

*GUIN: You (sic) document are waiting for you when you get back Thursday.*

*Co-conspirator: Thank you for making my evening...good night from Paris.*

(5)  On or about October 15, 2009, **GUIN** signed or caused to be signed G's signature as a guarantor for the co-conspirator, causing the Bank to approve a second line of credit for $500,000 for the co-conspirator.

(6)  On or about October 16, 2009, the co-conspirator wrote a personal check for $50,000 to a company owned by **GUIN'S** son.

(7) On or about April 25, 2011, **GUIN** signed or caused to be signed a signature for one of G's companies as a guarantor for the co-conspirator, causing the Bank to approve a line of credit increase for the co-conspirator.

(8) On or about May 23, 2011, the co-conspirator wrote a personal check to **GUIN'S** sister for $28,000.

(9) On or about June 28, 2011, the co-conspirator wrote a check to **GUIN'S** grandson for $7,000.

(10) On or about December 4, 2011, the co-conspirator wrote an email to **GUIN** that said:

> *Ann, I paid the last 2 interest payments and "other things" from the dollars that I had reserved for those charges so I need the renewal to clear my account.*

(11) On or about December 16, 2011, **GUIN** signed or caused to be signed G's signature as a guarantor for the co-conspirator, causing the Bank to approve a line of credit of credit increase for the co-conspirator.

In violation of Title 18, United States Code, Section 371.

## <u>NOTICE OF CRIMINAL FORFEITURE</u>
### 18 U.S.C. § 982(a)(2)

Pursuant to Title 18, United States Code, Section 982(a)(2), the United States gives notice to the defendant,

**ANN GUIN**
**a/k/a CHARLOTTE ANN GUIN,**

6

that in the event of conviction of the offense charged in Count 1 of this

Criminal Information, the United States intends to seek forfeiture of all property

constituting or derived from proceeds obtained, directly or indirectly, as the result

of such offense.

## Money Judgment and Substitute Assets

Defendant is notified that upon conviction, a money judgment may be

imposed against the defendant.  In the event that a condition listed in Title 21, United

States Code, Section 853(p) exists, the United States will seek to forfeit any other

property of the defendant in substitution up to the total value of the property subject

to forfeiture.


RYAN K. PATRICK
UNITED STATES ATTORNEY

By: _Belinda Beek_

Belinda Beek
Assistant United States Attorney